## STATE OF CONNECTICUT *v.* CHRISTOPHER GIONFRIDDO

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued May 5—decided July 12, 1966

*Charles G. Albom,* special public defender, for the appellant (defendant).

*Peter W. Gillies,* special assistant state's attorney, for the appellee (state).

MURPHY, J.   In an undated information to the February, 1964, session of the Superior Court, the state's attorney for Middlesex County charged the defendant, in seven counts, with the crimes of rape, indecent assault and risking impairment of the morals of a minor.   Attached to the information was an application for a bench warrant dated February 28, 1964, and a bench warrant dated the same day. The defendant, upon trial by the court, was found guilty on April 23, 1964, of four counts of the information and not guilty of the other three counts.   He appealed to this court and, after the record had been printed, filed a motion in the Superior Court on December 8, 1965, to vacate and erase the judgment on the ground that his constitutional rights had been violated because the bench warrant had been issued without supporting oath or affirmation and was therefore invalid so that his arrest and trial were illegal.   The motion was denied.   The defendant has amended his assignments of error on the appeal to include that action.   Before con-

sidering the appeal on its merits, it is necessary to dispose of this assignment of error. If the motion to vacate and erase is sound, the judgment would have to be set aside and the entire proceedings nullified.

On November 30, 1965, the opinion in *State* v. *Licari,* 153 Conn. 127, 214 A.2d 900, was announced. The instant motion followed shortly thereafter and is predicated on the holding in that case. The cases, however, are distinguishable. In the *Licari* case, a motion to dismiss on the ground of the invalidity of the arrest under the bench warrant was filed two days after the plea of not guilty had been entered but more than a month before the actual commencement of the trial. Id., 130. In the present case, the defendant pleaded to the information on April 7, 1964, and was found guilty on April 23, 1964, and about twenty months elapsed before the instant motion was filed. We cannot say that the court, in denying the motion, could not have found that the grounds for the motion were reasonably ascertainable by the defendant before he was put to plea. Indeed, in the *Licari* case, the claim of lack of jurisdiction of the person was necessarily raised long before the opinion in that case had been written. Although it was not embraced, the same opportunity to raise the question before trial existed here. The court did not commit reversible error in denying the motion to vacate and erase the judgment.

The defendant elected a trial to the court. After a lengthy trial, he was found guilty of two counts of rape and of two counts of indecent assault and not guilty of one count of indecent assault and of two counts of risking impairment of the morals of a minor. The offenses involved four different girls ranging in age from fourteen years and eight

months to sixteen years and ten months. All of the girls were residents of the Children's Home of the Evangelical Covenant Church in Cromwell and acted as baby-sitters for the children, by a previous marriage, of the defendant's wife. In his appeal, the defendant maintains that the evidence on which he was convicted is so improbable that reasonable doubt exists as a matter of law; that there was undue interference by the court in the cross-examination of the state's witnesses; that the court erred in denying two motions for mistrial; that there was error in rulings on evidence; and that the exclusion of the general public from the courtroom during the testimony of one of the complainants constituted a denial of the defendant's constitutional right to a public trial. Under the circumstances in this case, the temporary exclusion of the public during the testimony of one witness was permissible. *State* v. *Schmit,* 273 Minn. 78, 139 N.W.2d 800, 804 (citing *State ex rel. Baker* v. *Utecht,* 221 Minn. 145, 149, 21 N.W.2d 328).

Neither the counts in the information nor the order of proof at the trial followed the chronological sequence of the alleged offenses. The four girls had a very close and intimate relationship at the home and at school. They were constantly in each other's company and were so closely associated that it would be natural for them to disclose to each other any claimed improprieties on the part of the defendant while they were baby-sitting at his house. Sarah Zellers was the first to baby-sit, originally for Lucy Lombardo before Mrs. Lombardo married the defendant on November 20, 1963. On July 10, 1963, Sarah was fifteen years and eleven months old. She claimed to have been forcibly violated in the early morning hours when the defendant came

to Mrs. Lombardo's house while Mrs. Lombardo was a patient in a hospital. Sarah did not disclose the incident to anyone until seven months later, during which period she continued to sit regularly for Mrs. Lombardo, later Mrs. Gionfriddo, and she enlisted the services of the other three girls to substitute for her on occasion without telling them of her experience. Despite the claimed force and brutality of the ravishment, Sarah bore no marks on her limbs or other parts of her body and her clothing was not torn. In addition, Sarah testified that she was menstruating at the time but did not tell the defendant until he had penetrated her person. After the attack, he left the house, and she slept soundly until awakened by a woman friend of Mrs. Lombardo who came in to look after the children. Later that summer, the defendant drove Sarah to Massachusetts to visit her uncle for her vacation and upon her return to the home she continued to baby-sit and was on very friendly terms with the defendant and his wife.

The rape and assault on Joan Hatfield, age sixteen years and ten months, is alleged to have occurred on January 13, 1964, when she was obliged to stay overnight at the Gionfriddo house because of a snowstorm which prevented the defendant from driving her to the home after he had taken his wife to her place of employment. This attack was also claimed to have been accomplished by brute force and overwhelming strength. After it, Joan slept until 7:30 o'clock the following morning, when she had breakfast with the defendant and his wife, talked amicably with them and made no complaint to Mrs. Gionfriddo or the home authorities. She had no bruises or other marks on any part of her body.

The claims as to these incidents and those involving Doris Hawley and Beverly Oates, of which the defendant was found not guilty, did not come to the attention of the officials at the home until February 6, 1964, the day after the defendant had related to Beverly that the counselor at the home had called him to ask if Doris, Beverly's roommate and closest friend, was entertaining boyfriends at the defendant's home as Beverly had told the counselor was the case. Doris' baby-sitting privileges had been revoked by the counselor. The four girls then discussed their claimed experiences, the officials heard of them and an investigation followed which resulted in the defendant's arrest and trial.

Sarah was the last of the four girls to testify although she claimed to have been the first of the defendant's victims. As a result of the court's criticism of counsel's method of cross-examining her, the defendant filed a motion for a mistrial which was denied. During the presentation of the defense, a further motion for a mistrial was filed, and it was denied also. Both motions were predicated upon the claimed unwarranted interference by the court in a trial in which the defense in effect claims that the court was literally assuming the role of prosecutor and intervening in the trial when the state's attorney had raised no objection to the examination by the defense. In the counterfinding, the state avers: "Although there were a number of instances in which the court and Defense counsel became involved in somewhat heated debates, such disputes do not give grounds for complaint. This is particularly true in this case, as there was no jury to be influenced by such discussions." The following statement appears in the state's brief: "It is apparent that there was a certain degree of antagonism

created during the conduct of the trial between defense council [sic] and the court, but it must be recognized that this was not a trial before a jury." In the light of these statements, we have not restricted our review to the material in the finding and in the defendant's appendix (the state filed none) but where essential have examined the transcript for a better understanding of the occurrences.

We are not satisfied that counsel for the defendant is not to some extent responsible for much of the colloquy which unduly prolonged the trial and occupies a considerable portion of the transcript. Counsel's part in the colloquy, however, is no justification for the judge to assume the role of an adversary and interfere with the legitimate cross-examination of a witness. Counsel have not cited, and we have not found, any cases as precedent on this particular point in a criminal case tried without a jury.

The defendant was charged with crimes of the gravest character. Generally, the testimony of the female who claims to have been assaulted is the principal and sometimes the only evidence of the commission of the crime. Therefore, a broad latitude on cross-examination must be allowed the defendant in order to test the veracity of the witness. *State* v. *Rivers,* 82 Conn. 454, 457, 74 A. 757. In cases of this nature, in which there are seldom eyewitnesses, a denial of the right of cross-examination or undue interference by the court in the conduct of that examination may seriously curtail the legitimate and proper defense of one charged with the crime. It may not be abrogated or abridged at the discretion of the court to the prejudice of the cross-examining party. *State* v. *Luzzi,* 147 Conn. 40, 46, 156 A.2d 505. Where overwhelming force is alleged

to have been used in the offense, the lack of torn clothing, of bruised limbs or of an outcry raises a serious question as to the credibility of the complainant. *McQueary* v. *People,* 48 Colo. 214, 219, 110 P. 210.

The judge interrupted and chastised counsel a great number of times during the critical phases of the trial. These repeated interruptions and rebukes of counsel in the presence of the complainants then on the witness stand could only have the effect of repressing counsel's attack on the credibility of the witnesses and of giving aid and advice to the witnesses. A judge in a trial to the court should conduct himself with just as much circumspection as in a trial to a jury. See note, 94 A.L.R.2d 826, 841. A judge, trying the cause without a jury, should be careful to refrain from any statement or attitude which would tend to deny the defendant a fair trial. Considering all of the instances throughout this trial, the absence of corroboration and the closeness of this case, we are constrained to hold that a new trial should be ordered. *State* v. *Leopold,* 110 Conn. 55, 60, 147 A. 118.

There is error, the judgment of conviction on the third, fourth, sixth and seventh counts of the information is set aside and a new trial is ordered as to these counts.

In this opinion the other judges concurred.