STATE OF CONNECTICUT *v.* LLOYD MCLAREN
(AC 30065)

Harper, Alvord and West, Js.

Argued October 14, 2010—officially released March 8, 2011

*Alan Jay Black*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Tatiana A. Messina*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Lloyd McLaren, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2). On appeal, the defendant claims that (1) his sixth amendment right to confrontation was violated when the prosecutor disclosed an extrajudicial testimonial statement made by an individual absent from trial and (2) the prosecutor engaged in prosecutorial impropriety that deprived the

defendant of a fair trial.[1] We agree with the defendant's second claim that he was deprived of a fair trial because of prosecutorial impropriety and, accordingly, reverse the judgment of the trial court. The case is remanded to the trial court for a new trial.

The jury reasonably could have found the following facts. A.F.[2] is a certified nursing assistant who was employed as a home health care aide. She was assigned to work for an elderly woman with Alzheimer's disease (patient) at the patient's home in Bridgeport. The patient lived with her granddaughter (E), her two great-granddaughters (B and Y) and one of the great-grand-daughters' boyfriends. The defendant, E's boyfriend, visited regularly and spent nights at the residence a few days a week, such that A.F. believed him to be a resident.

The incident in question occurred after A.F. had been caring for the patient for approximately two and one-half weeks. On June 6, 2007, the defendant was present in the house when A.F. arrived to begin her shift. She testified that while she was tending to the patient, the defendant "rubbed up against" her and said that "everybody is at court, and we're gonna have sex today . . . ." A.F. also testified that at one point, the defendant requested that she look at his computer, which depicted

[1] The defendant uses the term "prosecutorial misconduct," but our Supreme Court has stated that "[t]he use of the term 'prosecutorial impropriety,' when reviewing allegedly improper statements by a prosecutor at trial, is more appropriate than the traditional term of 'prosecutorial misconduct' . . . ." (Citation omitted.) *State* v. *Fauci*, 282 Conn. 23, 26 n.2, 917 A.2d 978 (2007).

Additionally, the defendant claims that his right to a fair trial was violated both under the federal constitution and article first, § 8, of the state constitution, but our decision is confined to the federal constitution because the defendant has failed to provide an independent analysis of the state constitutional issue. See *State* v. *Ceballos*, 266 Conn. 364, 367 n.4, 832 A.2d 14 (2003).

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

inappropriately explicit pictures of women's anatomy. Throughout the morning, the defendant continued to unnecessarily bump into A.F.'s "back side . . . ."

During the early afternoon, A.F. put the patient to bed for her scheduled nap. A.F. was sitting on the patient's bed when the defendant approached and began touching her arm, leg and inner thigh. A.F. repeatedly told the defendant to stop, but he lifted her shirt and bra, and touched and kissed her chest, on her bare skin. He also attempted to unbuckle her belt. She testified that at this point, the defendant forcibly restrained her. A.F. was able to flee to the bathroom, but when she emerged again to check on the patient, the defendant once more approached and touched her inappropriately. This prompted A.F. to reach for the telephone. When the defendant prevented her from using the telephone, A.F. went to the back porch to avoid him.

Before A.F. left the patient's home, E and B returned to the residence. A.F. did not report the defendant's behavior to either of them. She had reported the behavior, however, to a friend by way of three or four telephone calls throughout the morning. She also placed a call to her supervisor after the first episode of inappropriate behavior, and they agreed that A.F. would visit the office immediately after her assignment. Upon completing her shift, A.F. went to the office to discuss the incident with her supervisor. Based on their conversation, A.F.'s supervisor called the police.

Officer John Burke of the Bridgeport police department responded to the call. After speaking with A.F., Burke went to the patient's residence and spoke to the defendant, who denied any wrongdoing. Burke also spoke to B's boyfriend, Winston Wright. Burke did not take a sworn statement from any party but arrested the defendant as a result of A.F.'s account of the incident and Wright's statement. The defendant was charged by

way of a substitute information with sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A), sexual assault in the fourth degree in violation of § 53a-73a (a) (2) and unlawful restraint in the second degree in violation of General Statutes § 53a-96 (a).

Prior to trial, it was revealed to the parties that the police report of the incident indicated that Wright told Burke that the defendant had stated: "I am going to tell you something. Tell me if I am a fool or it is funny . . . . The nurse . . . was here today and I sucked her tits on the bed." (Internal quotation marks omitted.) The defendant filed a motion in limine to preclude the admission into evidence of the "double hearsay" statement, even by reference. The court granted the motion, the only caveat being that "should [the defendant] testify and open the door to any of the [motions in limine topics] then I will hear the state on whatever motions it has." There was no further discussion on the motion during any of the multiple days of trial, and the state never made any motions in relation to Wright's statement.

Wright's statement was not mentioned during trial until the state called Burke to testify, after four witnesses, including A.F., had been examined. Burke stated that (1) he spoke to Wright, (2) Wright told him "something that the defendant told him," and (3) this information from Wright weighed in favor of Burke's decision to arrest the defendant. Subsequently, the defendant testified. On direct examination, the only mention of Wright was that he was a member of the household. When the defendant was cross-examined, the following exchange took place:

"[The Prosecutor]: Isn't it true . . . that on June 6, 2007, you picked [Wright] up from the train station?

"[The Defendant]: No.

"[The Prosecutor]: You didn't?

"[The Defendant]: No.

"[The Prosecutor]: And isn't it true . . . that when you picked—[Wright] up—

"[The Defendant]: I didn't pick him up, so I'm—I don't know where this question is coming from.

"[The Prosecutor]: Isn't it true that you saw him on that day on June 6, 2007?

"[The Defendant]: He was at the house when the—the police arrived. That's all that I remember.

"[The Prosecutor]: And isn't it true that you told him that you quote, unquote—

"[The Defendant]: I never told—

"[The Prosecutor]: sucked on the—

"[The Defendant]: —him—

"[The Prosecutor]: —nurse's tits?

"[The Defendant]: Never told him nothing like that.

"[The Prosecutor]: You never told him that?

"[The Defendant]: Nope.

"[The Prosecutor]: So, the police report's lying?

"[Defense Counsel]: Objection.

"[The Defendant]: Well—

"[Defense Counsel]: Objection, Your Honor. That's assuming facts not in evidence.

"The Court: All right, sustained. Ladies and gentlemen, you should disregard the last question by the prosecutor. I've sustained the objection. Go ahead. . . .

"[The Prosecutor]: So, you're maintaining that you know . . . Wright, but you did not say that—make that comment to him on that day?

"[The Defendant]: That's right.

"[The Prosecutor]: You're denying all of that?

"[The Defendant]: I didn't say it, so—

"[The Prosecutor]: So, you're denying it; is that right?

"[The Defendant]: I didn't—

"[Defense Counsel]: Your Honor—

"[The Defendant]: —say this.

"[Defense Counsel]: —I'm going to object; this is argumentative, at this point.

"[The Defendant]: I already answered the question.

"The Court: All right. I'll let him finish answering the question, and then you can move on.

"[The Prosecutor]: Thank you.

"[The Defendant]: The answer is, no. . . .

"[The Prosecutor]: You did not say it?

"[The Defendant]: No, I didn't say that.

"[The Prosecutor]: I have no further questions, Your Honor."

Wright's alleged statement then went unmentioned until the state's closing rebuttal argument to the jury, when the prosecution referenced it again: "Now, you also heard mention of a man by the name of Winston Wright. Police Officer Burke testified that . . . he met with . . . Wright, who told him something that the defendant told him that helped him in his case. Now, when the defendant got up on the [witness] stand, he was asked about . . . Wright, and he was asked

whether or not he told . . . Wright a certain something. The defendant, of course, denied it. But you heard testimony from Officer Burke that there was a statement made to him and to the other officer that helped him in this case." The prosecutor also argued: "You have to ask yourself, what was [A.F.'s] motive in . . . coming in here in open court with people she doesn't even know and telling her story? You have to ask yourself; what was her motive for calling her job, calling her friend, for going to her job and telling them what happened; for calling the police, what was her motive? She was subjecting herself to criminal prosecution for making a false police report. You have to ask yourself that. Was she willing to risk that to come in here to tell her story?"

During deliberations, pursuant to a jury request, the court replayed the testimony "relating to [Wright]" from Burke and the defendant. Subsequently, the jury found the defendant guilty only on the count of sexual assault in the fourth degree in violation of § 53a-73a (a) (2). The defendant was acquitted on the counts of sexual assault in the third degree in violation of § 53a-72a (a) (1) (A) and unlawful restraint in the second degree in violation of § 53a-96 (a).

The defendant filed timely motions for a judgment of acquittal and for a new trial on the ground that the verdict was against the weight of the evidence. Both motions were denied, and the defendant was sentenced to a total effective term of 360 days imprisonment, suspended after six months, with two years probation. Further, he was required to register as a sex offender for ten years. This appeal followed.

Because our decision as to the defendant's second claim is dispositive of this appeal, this court first addresses whether prosecutorial impropriety deprived the defendant of his constitutional right to due process.

The defendant alleged, inter alia, five instances of impropriety that occurred, when the prosecutor (1) asked the jury what motive A.F. would have to lie, (2) asked during cross-examination that the defendant, a native of Jamaica, explain his testimony that he has been in the United States permanently since 2001, (3) cross-examined the defendant using verbatim language from Wright's statement, (4) asked the defendant whether "the police report's lying," and (5) argued facts not in evidence by addressing Wright's statement again during her closing argument. The state disputed the first three allegations but conceded that it was improper for the prosecutor to ask the defendant if the police report was "lying" and to employ Wright's statement in her closing argument because it invited the jury to infer that the content of Wright's statement was to be considered in determining the defendant's guilt. We agree with the defendant that prosecutorial impropriety deprived him of a fair trial and, accordingly, reverse the judgment of the trial court.

The record reveals that the defendant failed to preserve the claim of prosecutorial impropriety at trial by way of an objection or a motion for a mistrial.[3] "Nonetheless, a defendant who fails to preserve claims of prosecutorial [impropriety] need not seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test. . . . The reason for this is that the defendant in a claim of prosecutorial [impropriety] must establish that the prosecutorial [impropriety] was so serious as to amount to a denial of due process

---

[3] The defendant's two posttrial motions, for a judgment of acquittal and for a new trial, both rested on the inconsistency of the verdict and argued that the verdict was against the weight of the evidence. Neither motion raised issues of prosecutorial impropriety or a confrontation clause violation, the claims raised on appeal.

. . . . In evaluating whether the [impropriety] rose to this level, we consider the factors enumerated by [the] court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). . . . The consideration of the fairness of the entire trial through the *Williams* factors duplicates, and, thus makes superfluous, a separate application of the *Golding* test." (Internal quotation marks omitted.) *State* v. *Felix*, 111 Conn. App. 801, 805–806, 961 A.2d 458 (2008).

"[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question . . . ." (Internal quotation marks omitted.) *State* v. *Coney*, 266 Conn. 787, 808, 835 A.2d 977 (2003).

I

We begin by determining whether the challenged remarks were improper. The first two instances claimed by the defendant are disposed of easily. The prosecutor's comment on A.F.'s motive was proper. Our Supreme Court has held that similar comments in closing argument were not improper because the state may argue that the witness has little motive to lie. *State* v. *Ceballos*, 266 Conn. 364, 381, 832 A.2d 14 (2003). We likewise agree with the state that the second argument did not rise to the level of impropriety because after the defendant objected to the inquiry on the ground that it violated the court's prior ruling granting his motion in limine to preclude evidence about his immigration status, the trial court deemed the question regarding

the defendant's "permanency" proper in light of the direct examination, and because the prosecutor withdrew the question and moved on. See, e.g., *Deas* v. *Diaz*, 121 Conn. App. 826, 843–44, 998 A.2d 200 (great deference is given to trial court's evidentiary decisions), cert. denied, 298 Conn. 905, 3 A.3d 69 (2010).

Each of the prosecutor's references to both the police report and Wright's statement therein, however, amounted to prosecutorial impropriety. The state concedes that it was improper to ask if the police report was "lying," and we agree. The prosecutor was, in essence, asking the defendant to comment on Burke's veracity because Burke had produced the report. See *State* v. *Singh*, 259 Conn. 693, 712, 793 A.2d 226 (2002) (holding that "a witness may not be asked to characterize another witness' testimony as a lie, mistaken or wrong"). Furthermore, the prosecutor's reference to the report amounts to an inappropriate comment on facts that were not in evidence because the report was never admitted as an exhibit. See *State* v. *Collazo*, 113 Conn. App. 651, 673, 967 A.2d 597 ("[a]rgument is improper if the prosecutor draws conclusions for which there is no evidentiary support"), cert. denied, 293 Conn. 904, 976 A.2d 705 (2009). We also agree with the state's concession that it was improper to refer to Wright's statement during the prosecutor's closing argument because such argument, likewise, called on the jury to base its verdict on facts that were not in evidence. The only remaining issue is whether any impropriety occurred with respect to the prosecutor's articulation of the content of Wright's statement during cross-examination.[4]

---

[4] The state argued that the defendant waived any challenge to the prosecutor's disclosure of Wright's statement during cross-examination by not objecting at the appropriate time. See *State* v. *Wells*, 111 Conn. App. 84, 88–89, 957 A.2d 557, cert. denied, 289 Conn. 958, 961 A.2d 423 (2008). Having reviewed the relevant transcripts from the trial, we do not agree that the defendant explicitly or implicitly waived any objection to the use of the exact language in Wright's statement during the motion in limine argument.

Prosecutorial impropriety may occur during the cross-examination of witnesses. *State* v. *Holloway*, 116 Conn. App. 818, 838, 977 A.2d 750, cert. denied, 294 Conn. 902, 982 A.2d 646 (2009). "It is well settled that prosecutorial disobedience of a trial court order, even one that the prosecutor considers legally incorrect, constitutes improper conduct." *State* v. *Ortiz*, 280 Conn. 686, 704, 911 A.2d 1055 (2006).[5]

Referring to the substance of Wright's statement was improper. The court granted the motion in limine, which sought "to prohibit entry of the double hearsay statement of . . . Wright, an individual not present at the scene of the alleged offense and whom the police did not take a statement from. . . . The admission, even by reference, of such irrelevant, prejudicial material would deprive the [d]efendant of a fair trial." In granting the motion, the court stated that the prosecutor would be allowed to *make further motions* to the court if the defendant took the witness stand and "open[ed] the door . . . ." Thus, because the prosecutor introduced the language in Wright's statement without seeking supplementary permission from the court, her actions were improper and in violation of the court's order in granting the motion in limine.

Similarly, we reject the state's argument that this was a proper subject of inquiry pursuant to Connecticut Code of Evidence § 6-10, which allows for prior inconsistent statements to be used for impeachment purposes. Because the cross-examination was improper in light of the court's ruling on the motion in limine, the impeachment argument is unavailing.

[5] The defendant does not argue that Wright's statement was commented upon in bad faith or that the prosecutor's questioning amounted to a *deliberate* disobedience of a court order, which might warrant that this court exercise its supervisory authority to deter such conduct, even when it does not rise to the level of a constitutional violation. *State* v. *Ubaldi*, 190 Conn. 559, 570–73, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). We decline to review the issue under this standard because we conclude that the defendant was denied his due process rights; hence, there is no need to exercise our supervisory powers.

Not only was the prosecutor's use of Wright's statement a violation of the motion in limine, but also, "[i]t is well established that a prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . [A] lawyer shall not . . . [a]ssert his personal knowledge of the facts in issue, except when testifying as a witness. . . . Statements as to facts that have not been proven amount to unsworn testimony . . . ." (Internal quotation marks omitted.) *State* v. *Griffin*, 97 Conn. App. 169, 179, 903 A.2d 253, cert. denied, 280 Conn. 925, 908 A.2d 1088 (2006). "A prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to evidence. . . . The rationale for the rule prohibiting the state from making such a reference is to avoid giving the jury the impression that the state has private information, not introduced into evidence, bearing on the case." (Citations omitted; internal quotation marks omitted.) *State* v. *Fields*, 265 Conn. 184, 208, 827 A.2d 690 (2003). It was improper for the prosecutor to ask about a specific inculpatory comment found in the police report and again refer to that comment during closing rebuttal argument because the police report was not in evidence, it was never offered as an exhibit, Wright did not testify, and there was nothing in the record that substantiated the content of Wright's statement.

In light of our reasoning that the cross-examination conducted by the prosecutor was in violation of the motion in limine and referenced facts that were not in evidence, in addition to the other instances of impropriety conceded by the state, the record demonstrates that the prosecutor acted improperly in three instances: (1) introducing the content of Wright's statement during cross-examination, (2) asking the defendant if the police report was "lying" and (3) revisiting Wright's statement during her rebuttal closing argument.

## II

Having identified prosecutorial impropriety, we proceed to determine whether the prosecutor's violations deprived the defendant of a fair trial. This court has recognized that "[t]o determine whether the defendant was deprived of his due process right to a fair trial, we must determine whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair, in violation of his right to due process. . . . The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties. . . .

"The . . . determination of whether the defendant was deprived of his right to a fair trial . . . involve[s] the application of the factors set forth by [our Supreme Court] in *State* v. *Williams,* [supra, 204 Conn. 540]. As [the court] stated in that case: In determining whether prosecutorial [impropriety] was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Reynolds,* 118 Conn. App. 278, 291–92, 983 A.2d 874 (2009), cert. denied, 294 Conn. 933, 987 A.2d 1029 (2010).

Applying the first *Williams* factor, we conclude that the prosecutor's impropriety was not invited by defense conduct or argument. As to the question whether the police report was "lying" and the reference to Wright's

statement during closing rebuttal argument, the state conceded that the defendant did not invite either impropriety, and we agree. With respect to the prosecutor's use of Wright's statement during cross-examination, defense counsel specifically argued in his motion in limine that Wright's statement was inadmissible. Wright's statement was never introduced in any fashion during direct examination of the defendant. We conclude, therefore, that defense counsel did not invite any of the instances of impropriety.

Next, we consider the frequency of the improprieties pursuant to the second *Williams* factor. First, during cross-examination, the prosecutor engaged in a repetitive line of questioning, thus magnifying the impropriety. Within a brief period, she asked: (1) "[i]sn't it true that you told him that you, quote, unquote . . . sucked on the . . . nurse's tits?" (2) "[y]ou never told him that?" (3) "you did not say that—make that comment to him," (4) "[y]ou're denying all of that?" (5) "[s]o, you're denying it; is that right?" and (6) "[y]ou did not say it?" The prosecution therefore asked, in rapid succession, *six times*, whether the defendant had admitted to a third party that he had assaulted A.F. The defendant's repeated denial of Wright's statement was met by the prosecutor's improper question as to whether his denial meant that the police report was "lying."

Again, during her closing rebuttal argument, the prosecutor called attention to Wright's statement and the defendant's denial. Then, during jury deliberations, the improper line of questioning from cross-examination was replayed. We characterize the improprieties as frequent because the jury was exposed to the statement, either directly or by reference, during three significant phases of the trial: the presentation of evidence, the closing argument and during jury deliberations.

Of major import to our analysis is the severity of this impropriety. The state classifies the improper questioning and argument as "moderately severe." We disagree. Upon review of the identified improprieties, we classify them as grossly egregious. The prosecutor revealed inadmissible evidence to the jury, which was, in essence, a confession by the defendant. As our Supreme Court has observed, confessions represent "the most damaging evidence of guilt . . . ." (Citation omitted.) *State* v. *Ruth*, 181 Conn. 187, 199, 435 A.2d 3 (1980); see also *State* v. *Patterson*, 276 Conn. 452, 473, 886 A.2d 777 (2005) ("evidence regarding an accused's admission of guilt generally is extremely important to the state and damaging to the accused"). In the present case, the content of Wright's statement was not only an admission, but its language was inflammatory and likely to have left a lasting impression in the minds of the jurors.

The severity of impropriety on cross-examination was compounded when the prosecutor again directed the jury's attention to this issue during her closing rebuttal argument, in referencing the "certain something" that was said to Wright. The state acknowledges that this "invited the jury to infer that the content of . . . [Wright's] statement was the 'certain something' that was referred to in her question on cross-examination, that Wright conveyed this comment to Burke, and that the jury [could] consider it in determining the defendant's guilt." During deliberations, while making its final determination of guilt, the jury's attention was brought to the illicit inculpatory statement *again*, when that portion of cross-examination was replayed at the jury's request. It is difficult to contemplate a situation that would be more severe than for the jury to hear, through a prosecutor's questioning, the functional equivalent of a confession from the defendant and then be repeatedly told of the significance of this statement in the police

officer's decision to arrest. In a case like this, where credibility is crucial and there is no other physical evidence to substantiate the allegations, "the significance of the [prosecutor's] improper conduct increase[d] considerably." *State* v. *Ceballos*, supra, 266 Conn. 417.

Turning to the fourth *Williams* factor, the subject of the impropriety, the defendant's alleged admission in Wright's statement was central to the critical issue in the case of whether the victim, in fact, had been sexually assaulted. There were no witnesses to the incident except for the defendant and the alleged victim. The state had no physical evidence. The defendant denied any culpability. Wright's statement was not cumulative of any witness testimony except for that of the complaining individual and was the only corroboration of her complaint. Therefore, the impropriety by the prosecutor was relevant to the central issue in the case, which was the comparative credibility of A.F. and the defendant.

For these same reasons, we are not convinced as to the strength of the state's case. Although "[t]he state's evidence does not need to be overwhelming to support a conclusion that prosecutorial impropriety did not deprive the defendant of a fair trial"; (internal quotation marks omitted) *State* v. *Lynch*, 123 Conn. App. 479, 506, 1 A.3d 1254 (2010); the state's case rested only upon the credibility of A.F. and upon the limited circumstantial evidence of her repeated complaints throughout the day. See id.

Finally, the question regarding whether the police report was "lying" was objected to, and, in response, the court told the jury to disregard that question. This was the only curative measure directly applied to any of the Wright statement improprieties. We acknowledge that there were general instructions given by the court that the jury was the sole finder of fact and that the

arguments and statements of counsel were not evidence to be considered. Nonetheless, we conclude that such instructions were not sufficient under the circumstances of this case because the prosecutor's use of Wright's damaging statement was never directly addressed in the curative measures, the jury was repeatedly exposed to the inculpatory statement, and the jury again heard the explicit language of the statement without limiting instructions during an imperative phase of the trial, jury deliberations, as it arrived at its verdict.

To summarize, our review of the *Williams* factors leads us to conclude that the defendant's conviction was a denial of due process. The defendant did not invite the improprieties and, in fact, attempted to pre-empt them by filing a motion in limine. The improprieties were repeated and severe. The state's case was not particularly strong, and the uninvited improprieties concerned a critical issue in the case. The only curative measure employed did not adequately address the likelihood that the improprieties caused the defendant prejudice in the minds of the jurors. Accordingly, we conclude that the defendant was deprived of a fair trial.

The judgment is reversed and the case is remanded for a new trial on the count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2).

In this opinion the other judges concurred.