******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DONALD G. *v.* COMMISSIONER
OF CORRECTION*
(AC 45422)

Bright, C. J., and Alvord and DiPentima, Js.

*Syllabus*

The petitioner, who had been convicted of several crimes in connection
with two incidents in which he sexually assaulted the minor victim, C,
sought a writ of habeas corpus. He claimed that K, his appellate counsel,
had rendered ineffective assistance by failing to raise claims of prosecu-
torial impropriety and a violation of *Brady* v. *Maryland* (373 U.S. 83)
that resulted from the state's failure to disclose to the defense a complete
copy of notes made by a police detective, Y, who had interviewed the
petitioner about C's allegations. During the petitioner's criminal trial, C
testified that she, her friend, and her sister had gone to the petitioner's
workplace to help him paint the interior of the building. C went upstairs
to paint an office while her friend and her sister remained downstairs.
The petitioner entered the office and sexually assaulted C. Y testified
on direct examination that the petitioner had told him that two girls,
in addition to C, helped him paint that day. Defense counsel then cross-
examined Y, and, during a recess, the prosecutor provided defense
counsel with an incomplete copy of Y's notes. Y then admitted on cross-
examination that the notes were inconsistent with his initial testimony
about the number of girls present that day. Subsequent to his criminal
trial, the petitioner obtained a complete copy of Y's notes through the
Freedom of Information Act (§ 1-200 et seq.). The habeas court rendered
judgment denying the habeas petition, from which the petitioner, on
the granting of certification, appealed to this court. *Held*:

1. The petitioner's claim that K rendered ineffective assistance was unavail-
ing, as the petitioner could not establish that he was prejudiced by K's
failure on direct appeal to raise claims of prosecutorial impropriety and
a violation of *Brady*:

   a. Notwithstanding the habeas court's erroneous determination that the
   petitioner's habeas petition did not allege claims of ineffective assistance
   concerning the *Brady* claim and the prosecutor's comment during closing
   argument to the jury that the petitioner had told Y "some BS" about his
   conduct with C, and thus it improperly failed to consider those claims,
   this court reviewed those claims on their merits, as a remand to the
   habeas court for its consideration of those claims was unnecessary, the
   parties having fully briefed the claims and agreed that the underlying
   facts were not in dispute and that the record was adequate for review
   by this court.

   b. Although the respondent, the Commissioner of Correction, conceded
   that the state had failed to provide defense counsel with a complete
   copy of Y's notes and did not dispute that the notes were favorable to
   the defense, the petitioner failed to establish that the notes were material
   to his defense within the meaning of *Brady*: because Y admitted that
   the incomplete copy of his notes did not indicate that the petitioner had
   told him that multiple girls in addition to C were present during the
   painting incident, which the petitioner contended would have discredited
   C's testimony and corroborated other testimony that only one girl other
   than C was present, any additional support would have been minimal,
   as defense counsel achieved the same result with the incomplete copy of
   Y's notes as he would have with a complete copy of the notes; moreover,
   despite the petitioner's contention that C's testimony was central to the
   state's case and that his ability to cast doubt on her truthfulness was
   paramount to establishing reasonable doubt, even though a complete
   copy of Y's notes may have lent support to defense counsel's impeach-
   ment of Y and C, it could not be said that there existed a reasonable
   probability that further impeachment of Y using a complete copy of his
   notes would have altered the outcome of the criminal trial.

   c. There was no merit to the petitioner's assertion that K rendered
   ineffective assistance by failing to claim that the prosecutor improperly
   commented to the jury that the petitioner had told Y "some BS" about

having "wrestl[ed]" with C and slapping her on the "butt": although the prosecutor's use of "BS" was inartful and unnecessary, the remark was a fair comment on the evidence, as Y had testified that the petitioner appeared to be very nervous when Y confronted him with C's accusations, and the prosecutor's suggestion that the petitioner had lied to Y about the painting incident constituted proper argument from which the jury was asked to infer that C's version of the events was true and that the petitioner's was not.

2. The habeas court properly concluded that K acted reasonably in deciding not to raise claims of prosecutorial impropriety regarding the prosecutor's use of the term "victim" when referring to C during trial and his remark that C's sister was in the courtroom during closing argument to the jury:

a. Although the criminal court had ordered the parties not to refer to C as the "victim" during trial, which both parties thereafter violated, the petitioner could not prevail on his claim that the prosecutor's use of that term six times gave rise to a claim of prosecutorial impropriety that K improperly failed to raise on direct appeal: this court concluded, after applying the factors set forth in *State* v. *Williams* (204 Conn. 523), that the prosecutor's sporadic use of the terms "victim" and "victimization" was not blatantly egregious or so frequent or severe as to deprive the petitioner of a fair trial, as the prosecutor properly referred to C numerous times as "the complainant," "the complaining witness" or by her initials during a trial that lasted five days and culminated in hundreds of pages of transcript; moreover, although the court did not give the jury specific curative instructions, the court repeatedly instructed the jury not to consider the statements and arguments of counsel as evidence, which the jury is presumed to have followed; furthermore, the prosecutor's acknowledgment to the jury that the state had the burden of proving the petitioner's guilt beyond a reasonable doubt, along with the jury's verdict of not guilty on one of two counts of sexual assault in the first degree with which the petitioner had been charged, made it especially unlikely that the jury was unduly influenced by the prosecutor's inappropriate references to C as the victim.

b. The petitioner failed to prove that a reasonable probability existed that he would have prevailed in his criminal appeal had K raised a claim that the prosecutor improperly remarked that C's sister was in the courtroom during closing argument to the jury: reasonably competent counsel may not have interpreted the prosecutor's ambiguous remark as giving rise to a valid claim of prosecutorial impropriety, and, even if K had argued that the prosecutor's remark was improper, that argument was unlikely to have succeeded, as it had minimal, if any, prejudicial effect in that the only new information it suggested was that C's sister, who did not testify during the trial, was a real person and was present during the trial; moreover, it was only the sister's presence during the painting incident that was disputed at trial, and the prosecutor's knowledge of her presence during trial would not corroborate C's testimony that her sister was present during the painting incident; furthermore, the lack of an objection by defense counsel suggested that counsel believed the statement was not so severe that it risked depriving the petitioner of a fair trial, the prosecutor having made the statement only once.

Argued September 19, 2023—officially released March 5, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Oliver, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*James E. Mortimer*, assigned counsel, for the appellant (petitioner).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Margaret E. Kelley*, state's attorney, and *Angela R. Macchiarulo*, supervi-

sory assistant state's attorney, for the appellee (respondent).

*Opinion*

BRIGHT, C. J. In this certified appeal, the petitioner, Donald G., appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. He claims that the court improperly (1) failed to consider two of his claims of ineffective assistance of appellate counsel and (2) concluded that his appellate counsel did not render ineffective assistance by failing to raise claims of prosecutorial impropriety on direct appeal from the petitioner's criminal conviction. We affirm the judgment of the habeas court.

On the basis of the evidence presented at the petitioner's criminal trial, the jury reasonably could have found the following facts, as set forth by this court in the petitioner's direct appeal. "The minor victim . . . is the niece of the [petitioner]. In the time period between May and October, 2003, when the victim was age ten or eleven, she, along with her sister and her friend, went to the [petitioner's] workplace to help him paint the interior of the building. The victim went upstairs to paint the office while her sister and her friend remained downstairs. The [petitioner] entered the office," where he sexually assaulted the victim. *State* v. *Donald H. G.*, 148 Conn. App. 398, 400, 84 A.3d 1216, cert. denied, 311 Conn. 951, 111 A.3d 881 (2014). "The [petitioner] later took the victim's sister and the victim's friend home, but he returned to his workplace with the victim where he continued to sexually assault her . . . . On the basis of these facts, [hereinafter referred to as the 2003 incident] the state charged the [petitioner] with one count of sexual assault in the first degree and two counts of risk of injury to a child." Id., 401. The state also charged the petitioner with (1) one count of sexual assault in the third degree and one count of risk of injury to a child in connection with an incident involving the victim at a 2007 Christmas party hosted by her family and (2) one count of sexual assault in the first degree in connection with another incident involving the victim at a 2008 Christmas party hosted by her family. Id., 401–402.

"On July 2, 2009, the victim, while staying with a friend's family due to a deterioration in her relationship with her family, confided in her friend's mother that the [petitioner] repeatedly had sexually abused her. A few days later, the friend's mother drove the victim to the police station to report the sexual abuse. The victim made further disclosures to the police on August 27, 2009, and September 5, 2009.

"The [petitioner] was arrested and charged, by way of an amended information, with two counts of sexual assault in the first degree, one count of sexual assault in the third degree, and three counts of risk of injury to a child. The jury found the [petitioner] guilty of all charges with the exception of the count of sexual

assault in the first degree that stemmed from the 2008 Christmas party incident, for which the jury returned a verdict of not guilty. The court accepted the jury's verdict, rendered judgment of conviction on five counts, and imposed a total effective sentence of thirty years [of] incarceration, ten years of which were mandatory, followed by five years of parole with special conditions, and lifetime registration as a sexual offender." Id., 402–403.

The petitioner appealed from his conviction, claiming that "(1) the court erred in allowing the state to introduce evidence of uncharged misconduct, (2) the court erred when it refused to conduct an in camera review of the victim's psychological records, (3) the court's improper response to a question posed by the jury during its deliberations deprived him of a fair trial, and (4) the prosecutor committed prejudicial impropriety during closing and rebuttal argument."[1] Id., 400. This court rejected the petitioner's claims and affirmed the judgment of conviction. Id. The petitioner was represented in his direct appeal by Attorney W. Theodore Koch III.

Thereafter, the petitioner filed his first petition for a writ of habeas corpus, claiming that his trial counsel, Attorney Robert A. Lacobelle (defense counsel), provided ineffective assistance in that he (1) failed to call four witnesses in support of an alibi defense, (2) allegedly had a conflict of interest, (3) improperly referred to the complainant as the "victim" during trial and failed to object or request a curative instruction when the prosecutor did the same, and (4) failed to adequately investigate an alleged incident of uncharged misconduct that the state introduced at trial. After a trial on the merits, the court, *Kwak, J.*, denied the petition. See *Donald G.* v. *Commissioner of Correction*, 203 Conn. App. 58, 63, 247 A.3d 182, cert. denied, 337 Conn. 907, 253 A.3d 45 (2021). The petitioner subsequently filed a petition for certification to appeal, which the habeas court granted. Id. This court affirmed the judgment, and our Supreme Court denied the petitioner's subsequent petition for certification to appeal. See *Donald G.* v. *Commissioner of Correction*, 337 Conn. 907, 253 A.3d 45 (2021).

In 2017, the self-represented petitioner initiated the present habeas action, claiming that Koch had rendered ineffective assistance. On May 24, 2021, the petitioner filed the operative petition—his second amended petition. In the operative petition, the petitioner raised ten separate "grounds" for relief, only three of which are relevant to the present appeal. First, the petitioner claimed in "ground three" that Koch rendered ineffective assistance by failing to raise on direct appeal a claim that the petitioner was prejudiced by the prosecutor's and defense counsel's references to the complainant as the "victim" during trial in violation of a court

order. Second, the petitioner alleged in "ground nine" that the prosecutor had improperly identified in the trial audience the third girl whom the victim had testified was present during the 2003 incident and improperly made a comment during closing argument that implied that the petitioner had lied to Detective Steven Young when Young interviewed him about the 2003 incident. The petitioner also alleged that the state's failure to provide the defense with a complete copy of Young's notes from that interview regarding the number of girls on the scene of the 2003 incident violated his right to confrontation and constituted a violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The petitioner then alleged in "ground ten" that Koch performed deficiently by "failing to raise the significant [and] obvious claims described in ground nine . . . [on] direct appeal over issues actually raised" and that Koch's deficient performance prejudiced him.

The respondent, the Commissioner of Correction, left the petitioner to his proof on grounds three and ten and raised several affirmative defenses to ground nine, including that the petitioner had failed to state a claim on which relief could be granted, that he had procedurally defaulted on that claim and that he was barred from raising it by the doctrine of res judicata, all of which the petitioner denied in his reply.

The habeas court, *Oliver*, *J.*, held a one day trial on July 26, 2021, during which the petitioner represented himself with the assistance of court-appointed standby counsel. The petitioner presented the testimony of Koch and the prosecutor from his criminal trial, Attorney Charles M. Stango Following trial, the petitioner filed a brief, and the respondent filed a notice that he would not file a posttrial brief because the petitioner had failed to proffer any evidence in support of his claims. On January 20, 2022, the court issued a memorandum of decision, in which it rejected the respondent's affirmative defenses but nevertheless denied the petitioner's habeas petition due to his failure to prove his claims. This certified appeal followed. Additional facts will be set forth as necessary.

On appeal, the petitioner claims that the habeas court improperly (1) failed to review his claims that Koch had rendered ineffective assistance by not raising a *Brady* claim and a claim that the prosecutor had improperly stated during closing argument to the jury that the petitioner had lied to a police detective, and (2) concluded that the petitioner's right to effective assistance of appellate counsel was not violated when Koch failed to raise two other claims of prosecutorial impropriety on direct appeal. We address each claim in turn.

I

The petitioner first claims that the habeas court erroneously concluded that the operative petition did not allege that Koch rendered ineffective assistance by failing to raise (1) a *Brady* claim arising out of the state's suppression of a complete copy of Young's notes and (2) a prosecutorial impropriety claim relating to the prosecutor's statement during rebuttal argument to the jury that the petitioner had "told Detective Young some BS," and that the court thus improperly failed to consider those claims. We agree with the petitioner, but because we conclude that both claims would have failed on their merits had Koch raised them on direct appeal, the court's error was harmless.

A

The following additional facts, as undisputed in the record, and procedural history inform our analysis. In its memorandum of decision denying the habeas petition, the habeas court interpreted the operative petition as "[raising] a single claim of ineffective assistance of appellate counsel . . . premised on ten alleged grounds of deficient performance for failure to raise claims on appeal." The court addressed each of the ten grounds using the four groupings set forth in the petition: "First (grounds one, two, and three), allegations related to the use of the term 'victim' by both the prosecutor and defense counsel; second (grounds four, five, and six), allegations related to the state's use of the petitioner's request for counsel as consciousness of guilt evidence; third (grounds seven and eight), allegations related to collusion between the prosecutor and defense counsel to sabotage the petitioner's alibi defense and mislead the jury; and fourth (grounds nine and ten), allegations related to improprieties when [the prosecutor] pointed to an individual in the public gallery of the courtroom to bolster the complainant's testimony and discredit the defense." The court's memorandum of decision lacks any reference to either a *Brady* claim or a claim of prosecutorial impropriety based on the prosecutor's statement to the jury that the petitioner had told Young "some BS."

On September 28, 2022, the petitioner filed a motion for articulation, requesting that the habeas court address his claims that "Koch rendered ineffective assistance . . . when he (1) failed to raise and litigate a claim that the petitioner's right to due process and a fair trial, pursuant to *Brady* and its progeny, was violated when the state failed to disclose material exculpatory evidence; and (2) that the petitioner's right to due process was violated by certain improprieties during the prosecutor's closing argument." The respondent filed an opposition to the petitioner's motion for articulation, arguing that the petitioner was "attempting to raise new claims not adequately [pleaded] in his habeas petition . . . ." The court denied the petitioner's motion for articulation on October 19, 2022.

The petitioner then filed with this court a motion for review of the habeas court's denial of his motion for articulation, requesting that this court order the habeas court to respond to the questions posed in the motion for articulation. The respondent opposed the motion for review, again arguing that the motion for articulation "improperly tried to compel the habeas court to decide claims that the petitioner had not adequately or clearly [pleaded] in his operative habeas petition." This court granted the petitioner's motion for review but denied the relief requested therein; however, we ordered, sua sponte, that the habeas court "shall articulate (1) whether it found that the petitioner pleaded in [the operative petition] that appellate counsel was ineffective for failing to raise a *Brady* claim with respect to . . . Young's notes, and the factual and legal basis therefor; (2) whether it found that the petitioner pleaded in [the operative petition in paragraph 97 (b) through (f)] that appellate counsel was ineffective for failing to argue on direct appeal that [the prosecutor] made several improper remarks in his closing statement at the petitioner's underlying criminal trial regarding both his time and experience as a prosecutor, as well as his personal opinion concerning the testimony offered at the criminal trial, and the factual and legal basis therefor; and (3) if the court did find that the petitioner pleaded [those] claims concerning ineffective assistance of appellate counsel, the court's decision thereon."

The habeas court addressed these issues in an articulation on January 30, 2023. As to the first issue, the court explained that "[t]he focus of the petitioner's assertions was the prosecutor pointing out someone in the courtroom while arguing how many others were with . . . the victim at the garage. . . . Ground ten contains the allegation that Koch was ineffective for the reasons described in ground nine. . . . [A] fair reading of ground nine is that it alleges an instance of prosecutorial impropriety" rather than a *Brady* violation. (Citations omitted.) According to the court, the petitioner raised the *Brady* claim "for the first time" in his posttrial brief, contrary to the well established principle that a claim cannot be raised for first time in a posttrial brief. As to the second issue, the court concluded that the assertions in "paragraph 97 (b) through (f) [of the operative petition] themselves were not claims of prosecutorial improprieties" but, instead, "were examples of how the prosecutor's closing arguments tried to reconcile [the victim's] saying two other girls were there [with] Young's testimony."[2] (Emphasis omitted.)

B

On appeal, the petitioner claims that ground nine of the operative petition alleged a *Brady* claim relating to the state's suppression of Young's notes and a prosecutorial impropriety claim relating to the prosecutor's

"BS" comment, and that ground ten alleged that Koch rendered ineffective assistance by failing to raise these claims on appeal. According to the respondent, the petitioner's references to *Brady* and the prosecutor's statement served as additional support for the petitioner's claim that the prosecutor had improperly identified the victim's sister in the courtroom "but did not, in themselves, constitute freestanding bases upon which to base a claim of ineffective assistance." We agree with the petitioner.

The following standard of review and legal principles guide our analysis. "[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the [habeas] court's interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 559, 864 A.2d 1 (2005). "[I]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . The modern trend . . . is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . The courts adhere to this rule to ensure that [self-represented] litigants receive a full and fair opportunity to be heard, regardless of their lack of legal education and experience . . . . This rule of construction has limits, however. Although we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law. . . . A habeas court does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . In addition, while courts should not construe pleadings narrowly and technically, courts also cannot contort pleadings in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Mourning* v. *Commissioner of Correction*, 120 Conn. App. 612, 624–25, 992 A.2d 1169, cert. denied, 297 Conn. 919, 996 A.2d 1192 (2010). "[T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, supra, 560.

Mindful of these principles, we interpret the allegations set forth in grounds nine and ten of the operative petition as alleging that Koch rendered ineffective assistance by failing to raise several claims on direct appeal, including both a *Brady* claim and a claim that the prosecutor improperly argued to the jury that the petitioner "told Detective Young some BS." In ground nine of the operative petition, although the subheading for that ground focuses only on the prosecutor's identification

of the sister in the courtroom, the petitioner also alleges a *Brady* violation and five other instances of prosecutorial impropriety. Following a discussion of the testimony relevant to the petitioner's claim that the prosecutor improperly identified the sister, the petition states in relevant part: "Defense counsel [asked] the court for a copy of [Young's] notes, [but] he 'never got those notes.' . . . The prosecutor made a copy of those . . . notes and gave [it] to [defense counsel]. . . . [Young checked] his notes and stated that it states her, another, and then it's cut off . . . . It wasn't photocopied properly. . . . Young testified [the] next day but could not be questioned [as] to [the] cut-off portion of his notes due to the state's failure . . . to turn over a complete copy of them. . . . Denying the right to confrontation, and a *Brady* violation for not turning over the requested notes, as stated in the transcript." (Citations omitted.) After the discussion of the *Brady* claim, the petition also alleges: "Prosecuting authority continued impropriety serving to rehabilitate [the victim's] and . . . Young's conflicting testimony in [paragraph 97] (b) through (f) . . . (f) 'He made a mistake [the petitioner] told . . . Young some B.S.' . . . (violated fifth amendment right to remain silent, can only be confirmed or denied by petitioner, injecting personal opinion, not in evidence that petitioner was B.S.ing)." (Citations omitted.) Ground nine concludes with the statement: "There is a reasonable probability that, but for the prosecutorial improprieties as described, *individually* [*and*]/or *cumulatively*, the result of the petitioner's criminal trial would have been different and more favorable to the petitioner. In the alternative, if only the [prosecutor] did not become a key witness himself, unsworn, identifying [the sister] in the trial audience, [i]t is reasonabl[y] likely the trial outcome would have been different." (Emphasis added.) Reading the petition broadly and realistically, and considering it as a whole, we interpret these statements as raising several claims of impropriety related to the prosecutor's conduct during the petitioner's criminal trial, including both a *Brady* claim and a claim that the prosecutor improperly stated that the petitioner had "told . . . Young some BS."

In ground ten of the operative petition, the petitioner then alleges that Koch rendered ineffective assistance by "failing to raise these significant [and] obvious *claims* described in ground nine . . . [on] direct appeal over issues actually raised." (Emphasis added.) Although, in relation to this argument, the petitioner discusses in detail only the prosecutor's identification of the sister in the courtroom, the petitioner nonetheless concludes his discussion of ground ten by stating that, "[t]here is a reasonable probability that, but for the petitioner's appellate counsel's deficient performance described, *individually and/or cumulatively*, the results of the petitioner's direct appeal would have been different and more favorable to the petitioner." (Empha-

sis added.) Therefore, when grounds nine and ten are read together, the operative petition is reasonably interpreted as raising a claim of ineffective assistance of appellate counsel arising from a failure to raise the multiple claims of misconduct by the prosecutor discussed in ground nine, including, inter alia, a *Brady* claim arising out of the state's suppression of a complete copy of Young's notes and a prosecutorial impropriety claim arising from the prosecutor's "BS" comment.

Our conclusion as to the *Brady* issue is bolstered by the habeas court's apparent understanding during trial that the petitioner was advancing a claim that Koch rendered ineffective assistance for not raising a *Brady* claim on appeal. During the habeas trial, as an offer of proof concerning the prosecutor's testimony, the petitioner explained: "I'd like to have [the prosecutor] testify today to two exhibits of . . . Young's handwritten notes. Both [exhibits] will support my *Brady* violation claim on page 18 of my petition. I subpoenaed [the prosecutor] to testify [as] to what his reason was for turning over the detective['s] notes, handwritten notes improperly photocopied . . . . [T]hat's pretty much what I want to talk to him about, to authenticate the notes. And the appellate counsel should've raised a *Brady* [claim] on appeal." When the court asked the petitioner where he raised that claim in the habeas petition because "there is clearly . . . no *Brady* claim" from the court's reading of the petition, the petitioner referred the court to grounds nine and ten of the petition and described the facts underlying the *Brady* claim. Thereafter, the court confirmed its understanding that the petitioner was "asserting an ineffective assistance of appellate counsel [claim] for not bringing a *Brady* claim relating to the miscopying or incomplete copying of . . . Young's notes." Despite the respondent's objection that "there's absolutely no *Brady* claim" in the petition, the court concluded that paragraph 94 of the petition appeared to raise such a claim and subsequently allowed the petitioner to question the prosecutor regarding Young's notes, and indicated that the court would review the trial transcript for defense counsel's cross-examination of Young regarding his notes.

Moreover, the petitioner did not abandon either claim, as he questioned Koch regarding his decision not to raise either the *Brady* or prosecutorial impropriety claim on appeal and discussed both claims in his posttrial brief. In particular, the petitioner's posttrial brief states that Koch rendered ineffective assistance by failing to raise a claim on appeal that the prosecutor had identified the sister in the audience during his closing argument and "used a *Brady* violation to sway the jurors [that] she was that third person" present, along with the victim and her friend at the time of the 2003 incident. The petitioner further argued in his posttrial brief that Koch performed deficiently by failing to raise claims

on appeal relating to the additional allegedly improper remarks referenced in paragraphs 89 (a) and 97 (b) through (f) of the habeas petition.

Therefore, we conclude that the habeas court erroneously determined that the operative petition did not allege that Koch rendered ineffective assistance by (1) failing to raise a *Brady* claim and (2) failing to raise a prosecutorial impropriety claim relating to the prosecutor's statement that the petitioner had "told Young some BS."

C

Our conclusion that the habeas court failed to consider claims that were properly before it typically would require that we remand the case to the habeas court for its consideration of those claims. See *Quint* v. *Commissioner of Correction*, 99 Conn. App. 395, 403, 913 A.2d 1120 (2007). "This court need not remand the case for the trial court's decision on [an] issue [however] . . . if it can be determined as a matter of law on the record before us. . . . In other words, if the evidence necessary for resolution is undisputed, then this court can decide the issue as a matter of law without need for a remand for factual findings." (Citation omitted.) *Lopez* v. *William Raveis Real Estate, Inc.*, 343 Conn. 31, 57, 272 A.3d 150 (2022).

As to the petitioner's *Brady* claim, the parties agreed during oral argument before this court that the facts relevant to the claim are not in dispute and that the record is therefore adequate for this court to address the merits of the claim on appeal. We agree that we can address the *Brady* claim as a matter of law because, given that the respondent's appellate counsel conceded during oral argument before this court that the evidence was suppressed and does not dispute that the evidence was favorable to the petitioner, the dispositive issue is whether the suppressed evidence was material under *Brady*. This is "a mixed question of law and fact subject to plenary review, with the underlying historical facts subject to review for clear error." *State* v. *Ortiz*, 280 Conn. 686, 720, 911 A.2d 1055 (2006). Moreover, the materiality inquiry is not about "what happened, based on the evidence presented and the permissible inferences drawn therefrom. The inquiry here is what would or would not have happened if something that did not happen had happened. We are as qualified as the [habeas] court to evaluate the record and to make that hypothetical determination." (Internal quotation marks omitted.) Id., 720–21 n.20; see also *Williams* v. *Commissioner of Correction*, 221 Conn. App. 294, 304–305, 301 A.3d 1136 (2023) ("[t]he test for materiality is whether the suppressed evidence in the context of the entire record creates a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" (internal quotation marks omitted)).

Similarly, as to the petitioner's prosecutorial impropriety claim, this court and our Supreme Court regularly consider such claims in the first instance on direct appeal. See, e.g., *State* v. *Courtney G.*, 339 Conn. 328, 340 n.4, 260 A.3d 1152 (2021); *State* v. *McLaren*, 127 Conn. App. 70, 78–79, 15 A.3d 183 (2011); *State* v. *Angel T.*, 105 Conn. App. 568, 573 n.4, 939 A.2d 611 (2008), aff'd, 292 Conn. 262, 973 A.2d 1207 (2009). Indeed, "a claim of prosecutorial impropriety warrants review even if the defendant fails to preserve it at trial . . . ." (Citations omitted.) *State* v. *Schiller*, 115 Conn. App. 189, 195, 972 A.2d 272, cert. denied, 293 Conn. 910, 978 A.2d 1113 (2009).

Here, given that the parties do not dispute that the prosecutor made the "BS" comment during closing argument and that Young testified regarding his conversation with the petitioner, whether the prosecutor's comment constitutes impropriety requires only that we apply the law governing prosecutorial impropriety claims to the undisputed facts in the record. Our review of this claim is therefore plenary. See *State* v. *Jones*, 135 Conn. App. 788, 802, 44 A.3d 848 (affording plenary review to trial court's conclusion that prosecutorial impropriety occurred because it was "conclusion of law based on [the trial court's] review of the evidence and the closing arguments and was not based on any findings of fact"), cert. denied, 305 Conn. 925, 47 A.3d 885 (2012).

Because both claims require only that we apply the law to the undisputed facts in the record, and the parties have fully briefed both claims on their merits before this court, we are in as good a position to decide the petitioner's claims as the habeas court would be on remand. Accordingly, this court properly may reach the merits of the petitioner's claims on appeal despite the habeas court's failure to address them. See *Quint* v. *Commissioner of Correction*, supra, 99 Conn. App. 403 ("[b]ecause the relevant facts are not in dispute . . . and resolution of the petitioner's [claims] requires only the application of the law . . . to those undisputed facts, this court properly may reach the merits of [the petitioner's claims] on appeal"); see also *State* v. *Donald*, 325 Conn. 346, 354–55, 157 A.3d 1134 (2017) (despite trial court's denial of motion to suppress without making factual findings or elaborating on legal basis for denial, record was adequate for review because material facts were not in dispute and question of whether court properly denied motion to suppress is subject to plenary review). We thus turn to the merits of those claims.

1

First, the petitioner argues that Koch rendered ineffective assistance by failing to raise a claim on direct appeal that the state's suppression of a complete copy

of Young's notes constituted a *Brady* violation. We conclude that the petitioner cannot establish that he was prejudiced by that failure and, accordingly, his ineffective assistance claim fails.

A petitioner cannot prevail on an ineffective assistance claim if the underlying claim that he argues his appellate counsel should have raised on appeal is without merit. See *Valentine* v. *Commissioner of Correction*, 219 Conn. App. 276, 285, 289–90, 295 A.3d 973 (petitioner cannot satisfy performance prong of *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), if issues not raised by appellate counsel lack merit, and *Strickland*'s prejudice prong requires reviewing court to analyze merits of underlying claimed error in accordance with appropriate appellate standard for measuring harm), cert. denied, 348 Conn. 913, 303 A.3d 602 (2023). Accordingly, to assess whether Koch rendered ineffective assistance by failing to raise a *Brady* claim on appeal, we turn to the merits of that claim.

"[T]he respective roles of the habeas court and the reviewing court are . . . the same under *Strickland* as they are under *Brady*. As a general matter, the underlying historical facts found by the habeas court may not be disturbed unless they were clearly erroneous . . . . [W]hether those facts constituted a violation of the petitioner's rights under the sixth amendment [however] is a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Carmon* v. *Commissioner of Correction*, 178 Conn. App. 356, 370, 175 A.3d 60 (2017), cert. denied, 328 Conn. 913, 180 A.3d 961 (2018).

"In *Brady* v. *Maryland*, supra, 373 U.S. 87, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The prosecution's duty to disclose under *Brady* applies not only to exculpatory evidence but also to impeachment evidence, which is evidence having the potential to alter the jury's assessment of the credibility of a significant prosecution witness. . . . To prove a *Brady* violation, the petitioner must establish: (1) that the state suppressed evidence (2) that was favorable to the defense and (3) material either to guilt or to punishment. . . . If the petitioner fails to meet his burden as to one of the three prongs of the *Brady* test, then we must conclude that a *Brady* violation has not occurred." (Citation omitted; internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, supra, 221 Conn. App. 304.

In the present case, because the respondent's appellate counsel conceded during oral argument before this court that Young's notes were suppressed and does not dispute that the notes were favorable to the defense, the dispositive issue is whether that evidence was material. "The test for materiality is whether the suppressed evidence in the context of the entire record creates a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. . . . [T]he mere possibility that an item of undisclosed evidence might have helped the defense or might have affected the outcome of the trial, however, does not establish materiality in the constitutional sense. . . . The question [of materiality] is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A reasonable probability of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial. . . . [W]here there is no reasonable probability that disclosure of the exculpatory evidence would have affected the outcome, there is no constitutional violation under *Brady*." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id., 304–305. In this respect, "[t]he test for materiality under *Brady* and the test for prejudice under *Strickland*[3] are the same—with respect to both, the petitioner must demonstrate that the alleged constitutional impropriety gives rise to a loss of confidence in the original outcome . . . ." (Footnote added.) *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 266–67, 112 A.3d 1 (2015).

The following additional facts, as undisputed in the record, are necessary to our resolution of this claim. At the petitioner's criminal trial, the prosecutor questioned Young on direct examination about his investigation, which included talking to the petitioner about the victim's accusations. Defense counsel then cross-examined Young, and, during a recess in the proceedings, received from the prosecutor a copy of the notes that Young had written during his conversation with the petitioner. That copy appeared to be incomplete in that the last word on it was "gir." When the proceedings resumed, the court asked defense counsel if he had sufficient time during the recess to read the notes, to which defense counsel responded: "I did. They're fairly straightforward." Defense counsel continued cross-examining Young, focusing on the number of girls that the petitioner told Young had accompanied the victim on the day of the 2003 incident, whether Young's notes used the singular "another girl" or the plural "another girls," and whether the copied notes were missing relevant language.

After his criminal trial, the petitioner acquired a com-

plete copy of Young's notes through a request pursuant to the Freedom of Information Act, General Statutes § 1-200 et seq. That copy provides in relevant part on the first line, "Remembers Girls. Her another girl," and, on the second line, "Painting Garage Doors." The respondent's appellate counsel conceded during oral argument before this court that the state had in fact failed to disclose a complete copy of Young's notes to defense counsel during the criminal trial.

On appeal, the petitioner claims that Young's notes were material under *Brady* because they contained evidence that impeached the victim's testimony, which was "the sole evidence offered in support of the petitioner's conviction . . . ." In particular, the petitioner argues that "a dispute existed as to the complainant's ability to accurately recall and testify truthfully concerning [the 2003 incident]," particularly regarding the number of girls who accompanied the victim to paint at the petitioner's workplace that day. The petitioner argues that the complete copy of Young's notes, which shows that he wrote "another girl," in the singular, would have corroborated the testimony of a defense witness that only one girl other than the victim was at the petitioner's workplace that day, and discredited the victim's testimony that two other girls—her sister and her friend—were present. According to the petitioner, given that the victim's testimony was "central" to the state's case, his "ability to adequately cast doubt on her truthfulness and recall was paramount to establish reasonable doubt." The petitioner argues that Koch "should have recognized this meritorious issue and pursued [it] on direct appeal." We are not persuaded.

Although our Supreme Court "has stated many times that when the prosecution's case hinges entirely on the testimony of certain witnesses, information affecting their credibility is material"; *State* v. *White*, 229 Conn. 125, 136–37, 640 A.2d 572 (1994); "[t]he seminal test remains whether there exists a reasonable [probability] that the outcome of the proceeding would have been different had the evidence been disclosed to the defense. . . . If the evidence in question would not have provided the [petitioner] with any significant impeachment material that was not already available and used by him . . . it is immaterial under *Brady*. This is true even if the [evidence's] cumulative effect may have lent some additional support to the [petitioner's] attack on [a witness]." (Internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, supra, 221 Conn. App. 316.

Here, we recognize that, given the lack of other corroborating evidence of the petitioner's guilt, whether the complete copy of Young's notes truly was cumulative of other information available to the petitioner is an important consideration. Moreover, we acknowledge that the complete copy of Young's notes, which was

inconsistent with Young's testimony that the petitioner had told him that two girls, in addition to the victim, were on the scene, may " 'have lent some additional support' " to defense counsel's impeachment of both Young and the victim. Id. Nonetheless, given defense counsel's thorough cross-examination of Young, we conclude that any additional support would have been minimal. Indeed, despite Young's initial testimony that the petitioner "told me, if I remember correctly, it was several girls [painting that day] along with [the victim]," and his uncertainty about whether he in fact wrote "another girls" or "another girl," Young admitted that his notes were not consistent with his initial testimony. The following colloquy took place between defense counsel and Young on cross-examination:

"Q. . . . With respect to that g-i-r, there's a portion that's cut off that wasn't photocopied properly, correct?

"A. I would assume so. Yes.

"Q. Okay. Do you assume that that other part missing is the letter L, another girl?

"A. I don't know. It could be . . . L, it could be l-s. Without the report—or, I'm sorry—my notes, I wouldn't know for sure.

"Q. Okay. But it can't—if you wrote her and another— you wouldn't write her and another girls?

"A. Right. But I didn't write and. I wrote her, another, and I could have wrote girls; I was trying to write fast, so.

"Q. But another girls isn't proper English?

"A. No, it's not.

"Q. Okay. So, he never told you there were three girls there, fair to say?

"A. [The petitioner] told me there were girls there, several girls, if I remember correctly.

"Q. That's not what you have in your notes, though?

"A. Correct.

"Q. Okay. That's what you may have written later on at the police station when you wanted to write up a report, but that's not what you wrote in your notes, correct?

"A. I didn't write that in my notes, no."

The fact that defense counsel achieved the same result with an incomplete copy of the notes that he would have with a complete copy—that is, an admission from Young that his notes did not indicate that the petitioner had told him that multiple girls in addition to the victim were present on the day of the 2003 incident—supports our conclusion that defense counsel effectively impeached Young's earlier testimony that the petitioner told him several girls were present. We cannot say there is a reasonable probability that further

impeachment of Young's testimony using the complete copy of the notes would have altered the outcome of the petitioner's criminal trial. Accordingly, because the suppressed evidence was not material, a *Brady* violation did not occur, and the petitioner thus cannot establish that he was prejudiced by Koch's failure to raise that claim on direct appeal. See *Robinson* v. *Commissioner of Correction*, 204 Conn. App. 560, 571 n.5, 253 A.3d 1040 ("[b]ecause the proffered evidence is not material, the habeas court correctly concluded that the petitioner did not suffer prejudice from his prior habeas counsel's failure to investigate and present the allegedly suppressed documents"), cert. denied, 337 Conn. 903, 252 A.3d 363 (2021).

2

The petitioner next claims that Koch rendered ineffective assistance by failing to raise a claim that, during rebuttal argument to the jury, the prosecutor improperly "interjected his personal opinion concerning the veracity of the petitioner" by stating that the petitioner had "made a mistake. He told Detective Young some BS about maybe he shouldn't have been wrestling." (Emphasis omitted.) Because the petitioner's prosecutorial impropriety claim fails as a matter of law, we conclude that the petitioner was not prejudiced by Koch's failure to raise that claim on direct appeal.

The following legal principles govern claims of prosecutorial impropriety. "[A] claim of prosecutorial impropriety . . . even in the absence of an objection, has constitutional implications and requires a due process analysis under *State* v. *Williams*, 204 Conn. 523, 535–40, 529 A.2d 653 (1987). . . . In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . The two steps are separate and distinct: (1) whether [an impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] [was harmful and thus] caused or contributed to a due process violation is a separate and distinct question. . . . The defendant bears the burden of satisfying both of these analytical steps. . . . In evaluating whether a defendant has carried that burden, we recognize that prosecutorial inquiries or comments that might be questionable when read in a vacuum often are, indeed, appropriate when review[ed] . . . in the context of the entire trial." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *O'Brien-Veader*, 318 Conn. 514, 523–24, 122 A.3d 555 (2015).

This court previously has recognized that prosecutorial impropriety may occur during the cross-examination of witnesses or in closing arguments. See *Valentine* v. *Commissioner of Correction*, supra, 219 Conn. App.

298 (closing arguments); *State* v. *McLaren*, supra, 127 Conn. App. 81 (cross-examination of witnesses). "[B]ecause closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . .

"Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. . . . While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury ha[s] no right to consider." (Citation omitted; internal quotation marks omitted.) *Valentine* v. *Commissioner of Correction*, supra, 219 Conn. App. 298–99.

The following additional facts, as undisputed in the record, are relevant to our resolution of the petitioner's claim. During the petitioner's criminal trial, the following colloquy occurred between the prosecutor and Young regarding the conversation Young had with the petitioner at the petitioner's workplace:

"A. . . . [W]e identified ourselves as police officers, and we requested to speak with the foreman.

"Q. What happens then?

"A. One of the gentlemen stopped working, came up and asked if he could help us . . . . He said that the foreman was out to lunch at the time and asked if he could help us. I said, what's your name, and he identified himself as [the petitioner], and then I told him that we were actually there to speak with him.

"Q. Prior to that last statement by you that we're actually here to speak with you, sir, prior to that, describe [the petitioner's] mood and demeanor—actually, demeanor is probably better.

"A. He was pleasant. He seemed like he just wanted to help us out.

"Q. The minute that you say you're there to speak with him, what happens?

"A. Well, nothing at first. We brought him over—

away from the other gentleman that was working there and then I told him that I was there to talk to him about an allegation that [the victim] had made that she had been inappropriately touched by him, and that's when his demeanor completely changed.

"Q. How did it change? Only with that information, how did it change?

"A. Okay. His hands began to shake; he began to start to say something, and he would stutter; he couldn't finish a sentence. He was very nervous.

"Q. What happens next?

"A. He started to say, well, I shouldn't have done, and then he stopped midsentence, and he started to tell me about a wrestling story with him and [the victim] where he had slapped her on the butt, is what he said.

"Q. So, you haven't asked him a question yet?

"A. No.

"Q. And he says, I shouldn't have done [that], and then starts telling you this story?

"A. That's correct."

On the basis of this testimony, the prosecutor stated during rebuttal argument to the jury: "Young goes to see [the petitioner] unannounced. Why? Because if you go see someone right away, they don't have time to prepare a story, and you get to see their face and you get to see how they react, their demeanor, when they're confronted with the fact that the only confrontation initially—we have a report that you may have inappropriately touched your niece. Boom, Mr. Jovial; can I help you guys? What brings you by? He became panic stricken. Dumbfounded, maybe. The first thing out of his mouth is not, this is outrageous; I would never have done such a thing. It's, oh, maybe I shouldn't have done it. There was this time we were wrestling. He doesn't know what . . . Young knows. So, the classic response is to come up with a scenario that you can try and explain. He made a mistake. *He told . . . Young some BS* about maybe he shouldn't have been wrestling. Why? Because he's hoping that's all . . . Young knows. We all know now Young knew a lot more than that." (Emphasis added.)

On appeal, the petitioner argues that, because he "never testified and there was no evidence admitted that [his] statement to Young was not truthful . . . there was no evidence from which the jury could reasonably infer that the petitioner lied to Young," and, it was therefore "improper for [the prosecutor] to interject his own opinion about the petitioner's credibility." (Citation omitted.) In response, the respondent argues that "it is clear from the context in which [the prosecutor's comment] was made that the prosecutor was not proffering his personal opinion regarding the credibility

of the petitioner's statements to Young or of the petitioner generally but was drawing reasonable inferences from the evidence and, specifically, Young's testimony." We agree with the respondent.

The petitioner accurately states the law that "[t]he prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses . . . [n]or . . . express his opinion, directly or indirectly, as to the guilt of the defendant." (Internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 713, 793 A.2d 226 (2002). At the same time, however, "[i]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand. The state's attorney should not be put in the rhetorical straitjacket of always using the passive voice, or continually emphasizing that he [or she] is simply saying I submit to you that this is what the evidence shows, or the like." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 583–84, 849 A.2d 626 (2004).

Additionally, it "is well established that a prosecutor may argue about the credibility of witnesses, as long as [his] assertions are based on evidence presented at trial and reasonable inferences that jurors might draw therefrom. . . . The prosecutor may also make these arguments with respect to the credibility of statements by the defendant himself, so long as they are rooted in the evidence at trial. See, e.g. . . . *State* v. *Smalls*, 78 Conn. App. 535, 542–43, 827 A.2d 784 (prosecutor may properly comment on defendant's voluntary pretrial statements if the defendant relies on those statements for a defense and comment does not burden defendant's right not to testify), cert. denied, 266 Conn. 931, 837 A.2d 806 (2003)." (Citations omitted; internal quotation marks omitted.) *State* v. *O'Brien-Veader*, supra, 318 Conn. 547–48.

Here, the prosecutor's suggestion that the petitioner was lying to Young was a proper argument rooted in the evidence presented at trial. The jury heard Young testify that the petitioner appeared to be "very nervous" when Young confronted him about the victim's accusations and that the petitioner subsequently denied those accusations, and the jury also heard the victim testify as to the truth of those accusations. From this testimony, the jury reasonably could have inferred that the petitioner was nervous when he spoke with Young not because, as defense counsel implied during closing argument, it is natural to "get nervous when a police officer stops you," especially when confronted with an allegation of sexual assault, but, instead, because the

victim's accusations were true, and the petitioner's wrestling explanation was a lie, or as the prosecutor phrased it, "BS," that was intended to convince Young that nothing more had transpired between the petitioner and the victim. The prosecutor was therefore asking the jury to draw a reasonable inference in the state's favor based on the evidence at trial, namely, that the victim's version of events was true and the petitioner's was not. Although the prosecutor's use of "BS" was inartful and unnecessary, it was not improper but, instead, was a fair comment on the evidence. See *State v. Fauci*, 282 Conn. 23, 39, 917 A.2d 978 (2007) ("in a case that essentially reduces to which of two conflicting stories is true, it may be reasonable to infer, and thus to argue, that one of the two sides is lying").

Accordingly, because we conclude that the prosecutor's statement was not improper and that the petitioner's prosecutorial impropriety claim thus lacks merit, the petitioner cannot establish that he was prejudiced by Koch's failure to raise that claim on appeal.

## II

The petitioner next claims that the court erroneously concluded that Koch did not render ineffective assistance by failing to raise on direct appeal two other claims of prosecutorial impropriety that allegedly occurred during the petitioner's criminal trial. Specifically, the petitioner claims that the prosecutor improperly (1) referred to the complainant as the "victim" throughout the trial in violation of a court order and (2) identified a member of the trial audience as the third girl on the scene of the 2003 incident in an attempt to bolster the credibility of the victim and Young.

The following legal principles regarding claims of ineffective assistance of appellate counsel inform our analysis. "The first part of the *Strickland* analysis requires the petitioner to establish that appellate counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound [appellate] strategy. . . . The right to counsel is not the right to perfect representation. . . . [Although] an appellate advocate must provide effective assistance, he is not under an obligation to raise every conceivable issue. A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions. . . . Indeed, [e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." (Internal quotation marks omitted.)

*Valentine* v. *Commissioner of Correction*, supra, 219 Conn. App. 288–89. "The determination of which issues to present, and which issues not to present, on an appeal is by its nature a determination committed to the expertise of appellate counsel, and not to his client. . . . [A] habeas court will not, with the benefit of hindsight, second-guess the tactical decisions of appellate counsel." (Citation omitted; internal quotation marks omitted.) *Camacho* v. *Commissioner of Correction*, 148 Conn. App. 488, 496, 84 A.3d 1246, cert. denied, 311 Conn. 937, 88 A.3d 1227 (2014). Additionally, as previously noted in this opinion, "the second prong [of *Strickland*] considers whether there is a reasonable probability that, but for appellate counsel's failure to raise the issue on appeal, the petitioner would have prevailed in his direct appeal . . . [which] requires the reviewing court to [analyze] the merits of the underlying claimed error in accordance with the appropriate appellate standard for measuring harm." (Internal quotation marks omitted.) *Valentine* v. *Commissioner of Correction*, supra, 289–90.

### A

The petitioner first claims that Koch rendered ineffective assistance by failing to raise a claim on appeal that the prosecutor's repeated use of the term "victim" during trial in violation of a court order was improper and deprived the petitioner of his right to a fair trial. We are not persuaded.

The following additional facts, as set forth by this court in the petitioner's prior habeas appeal, are relevant to our review of this claim. "Prior to the commencement of trial, the petitioner's [defense] counsel filed a motion with the court to prohibit the use of the word 'victim' by either party. The court granted the motion in limine and cautioned all parties to refrain from addressing the complainant as the 'victim.' During the course of the trial, however, both the prosecutor and the petitioner's [defense] counsel sporadically used the word 'victim' when referencing the complainant in the presence of the jury. The prosecutor referred to the complainant as the 'victim' on six occasions and [defense] counsel did so twice. [Defense] counsel did not object to the prosecutor's violation of the court order or request a curative instruction from the court." *Donald G.* v. *Commissioner of Correction*, supra, 203 Conn. App. 70. This court upheld the first habeas court's decision that defense counsel did not render ineffective assistance by referring to the complainant as the "victim" or by failing to object to or request a curative instruction following the prosecutor's similar references. Id., 72–73. This court resolved the petitioner's claim of ineffective assistance of trial counsel on the prejudice prong of *Strickland* without addressing the performance prong, reasoning that, "although both the state and [defense] counsel inappropriately referred to

the complainant as the victim, neither did so consistently. Both parties predominately identified the witness either as the complainant or by use of her initials. There is simply no support for the petitioner's assertion that, but for [defense] counsel's use of the word 'victim' on two occasions throughout the entirety of the trial proceeding, or his failure to object or to request a curative instruction after the prosecutor made similar references, it is reasonably likely that the outcome of the trial would have been different. This conclusion is buttressed by the fact that the petitioner in fact was acquitted of one of the charges against him. If the jury had been improperly influenced by these references to the victim, presumably it would not have acquitted the petitioner of one of the charges." Id.

Consistent with this court's reasoning in the petitioner's prior habeas appeal, in the present case, Koch testified that "the evidence overall was so powerful that I didn't think that people saying the word, victim, a few times was going to get us anywhere. And also because [the petitioner was] acquitted on one count of sexual assault in the first degree, which seems to show to me that the jury didn't necessarily think of the complainant as a victim to the point that they could just blindly convict [him] because somebody called her a victim inadvertently in the courtroom."

On the basis of this testimony, the habeas court found that Koch "did not view the use of the term 'victim' as a strong issue to pursue on direct appeal." The court thereafter concluded that, "[g]iven the claim raised in the prior habeas, as affirmed by the Appellate Court . . . this claim was not one that reasonably competent appellate counsel should raise. Therefore, as applied to the petitioner's allegation that appellate counsel was ineffective for failing to raise a claim on direct appeal challenging the use of the term 'victim' during the criminal trial, the court concludes that the petitioner has failed to prove both prongs of the [*Strickland*] test. There is no evidence establishing that [appellate counsel] rendered deficient performance on this basis. Even if this court were to assume deficient performance, there is no prejudice."

On appeal, the petitioner, addressing the factors used to determine whether a prosecutorial impropriety deprived a defendant of a fair trial; see *State* v. *Williams*, supra, 204 Conn. 540;[4] argues that the prosecutor's use of the term "victim" was not invited by the defense, was severe, frequent and central to critical issues in the case because the term "victim" has intrinsic potential for prejudice where allegations of sexual assault are raised, and that the prosecutor's use of that term was not mitigated by any curative measures by the court. Last, the petitioner asserts that the state's case against him was not particularly strong because it hinged on the victim's credibility, as to which there

were already significant issues.

The respondent concedes that the prosecutor "may have improperly used the term 'victim' in light of the trial court's order precluding use of that term" but nevertheless argues that "any claim that the petitioner [was] deprived of a fair trial as a result of the prosecutor's use [is] meritless." According to the respondent, under the circumstances, "it is highly unlikely that the jury even later recalled, let alone [was] swayed by," the prosecutor's use of the term "victim" during the evidentiary portion of the trial, and "the jury reasonably would have interpreted the prosecutor's sporadic use of the term [during closing argument] as argument concerning what the evidence revealed and not as any improper personal opinion regarding the victim's credibility or the petitioner's guilt."

Although "a *court's* repeated use of the word victim with reference to the complaining witness is inappropriate when the issue at trial is whether a crime has been committed . . . [a] different set of circumstances exists when the person making reference to the complaining witness is the prosecutor. . . . This is so, our courts have held, for two basic reasons. First, although a prosecutor's reference to the complainant as the 'victim,' in a trial where her alleged victimization is at issue, risks communicating to the jury that the prosecutor personally believes that she in fact is a victim, and thus the defendant is guilty of victimizing her, the isolated or infrequent use of that term in a trial otherwise devoid of appeals to passion or statements of personal belief by the prosecutor will probably be understood by jurors to be consistent with the prosecutor's many proper references to the complainant as the complainant or the alleged victim, particularly where the prosecutor openly acknowledges and willingly accepts the state's burden of proving the defendant guilty beyond a reasonable doubt solely on the basis of the evidence admitted at trial. Second, when a prosecutor uses that term in argument, where his or her role is generally expected and understood to be that of an advocate, such isolated or infrequent references to the complainant as the 'victim' are likely to be understood by jurors as parts of a proper argument that the evidence has established the complainant's victimization, and thus the defendant's guilt, beyond a reasonable doubt. In either of those circumstances, the prosecutor's use of the term 'victim' in reference to the complainant is not considered improper because such usage does not illicitly ask the jury to find the defendant guilty on the basis of the prosecutor's personal belief in the complainant's victimization or the defendant's guilt." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Williams*, 200 Conn. App. 427, 434–35, 238 A.3d 797, cert. denied, 335 Conn. 974, 240 A.3d 676 (2020).

"Notwithstanding our courts' willingness . . . to

excuse a prosecutor's rare and infrequent use of the term 'victim' to describe the complainant in a criminal trial, our Supreme Court has expressly admonished prosecutors to refrain from making excessive use of that term because of its obvious potential for prejudice." *State* v. *Thompson*, 146 Conn. App. 249, 269, 76 A.3d 273, cert. denied, 310 Conn. 956, 81 A.3d 1182 (2013).

On the basis of our review of the record, we agree with the habeas court's conclusions that Koch acted reasonably in determining not to raise this claim on appeal and that the petitioner was not prejudiced by that decision. In the context of the entire trial, the prosecutor's use of the terms "victim" and "victimization" was neither so frequent nor so severe as to deprive the petitioner of a fair trial.

In total, over the course of a five day trial that culminated in hundreds of transcript pages, there were only six references to the term "victim" or "victimization" by the prosecutor, which were sporadically mixed in among his numerous proper references to the victim as the "complainant," the "complaining witness," or by her initials. Given this ratio and considering the contexts in which the term was used, the alleged improprieties were infrequent and not consistent. As this court similarly noted in the petitioner's prior habeas appeal, "although both the state and [defense] counsel inappropriately referred to the complainant as the victim, neither did so consistently. Both parties predominately identified the witness either as the complainant or by use of her initials." *Donald G.* v. *Commissioner of Correction*, supra, 203 Conn. App. 72; see also *State* v. *Olivero*, 219 Conn. App. 553, 594, 295 A.3d 946 (prosecutor's fourteen uses of term " 'victim' " during evidentiary portion of trial and closing argument "was not frequent when compared to the entirety of the trial, which was six days and culminated in approximately 900 transcript pages"), cert. denied, 348 Conn. 910, 303 A.3d 10 (2023).

Moreover, the alleged improprieties were not "blatantly egregious . . . ." *State* v. *Fauci*, supra, 282 Conn. 51; id. ("[b]eyond defense counsel's failure to object, in determining the severity of prosecutorial impropriety, we look to whether the impropriety was blatantly egregious or inexcusable"). On the basis of our review of the record, the prosecutor's "words . . . were not accompanied by other expressions of opinion as to the defendant's guilt" but, instead, appear to have been "mostly ill-chosen short-form references to the complainant, whom [the prosecutor] most commonly referred to during trial as the complainant . . . or by her initials . . . ." *State* v. *Thompson*, supra, 146 Conn. App. 273. Notably, Koch testified that he believed that the parties' references to the term "victim" during trial were generally inadvertent.

Finally, although the court did not provide specific

curative instructions to the jury, the court repeatedly gave the jury general instructions not to consider the statements and arguments of counsel as evidence, including prior to the evidentiary portion of trial, and both before and after closing arguments. Given that the jury is presumed to follow instructions given by the court, "[t]hese general instructions were more than adequate to counteract any harm resulting from the alleged improprieties." *State* v. *Olivero*, supra, 219 Conn. App. 595; see id. (court repeatedly instructed jury that counsel's arguments were not evidence, jurors were sole judges of credibility, and jurors must confine themselves to evidence in record). Additionally, the prosecutor expressly acknowledged the state's burden of proof beyond a reasonable doubt numerous times throughout closing arguments, stating at the start of his closing argument, for example, that "I need to be able to show you beyond a reasonable doubt that each element [of the charge] was met. If I don't, you are to acquit him on that charge; if I do, you should convict," and stating during rebuttal argument that whether the inconsistencies between the victim's testimony and the testimony of a defense witness "give [the jury] reasonable doubt . . . [is] up to [the jury] to decide." This makes it especially unlikely that the jury was unduly swayed by the prosecutor's sporadic use of the term "victim." See also *State* v. *Olivero*, supra, 595 (prosecutor began closing argument by informing jury that it, and not prosecutor, trial counsel or judge, was fact finder).

This conclusion draws further support from the jury's verdict finding the petitioner not guilty on the count of sexual assault in the first degree that stemmed from the 2008 Christmas party incident. See *State* v. *Courtney G.*, supra, 339 Conn. 365 (jury's verdict of not guilty on some charges "clearly demonstrat[es] the jurors' ability to filter out the allegedly improper statements and make independent assessments of credibility" and "is a strong indication that the defendant was not prejudiced by prosecutorial impropriety" (internal quotation marks omitted)). As this court concluded in the petitioner's prior habeas appeal, "[i]f the jury had been improperly influenced by these references to the victim, presumably it would not have acquitted the petitioner of one of the charges." *Donald G.* v. *Commissioner of Correction*, supra, 203 Conn. App. 73.

Accordingly, we agree with the habeas court's conclusion that Koch's decision not to raise this claim of prosecutorial impropriety neither constituted deficient performance nor prejudiced the petitioner.

B

The petitioner next claims that Koch rendered ineffective assistance by failing to raise a claim on appeal that, during rebuttal argument to the jury, the prosecutor improperly proffered unsworn testimony by identifying the victim's sister, the third girl who allegedly was

present during the 2003 incident, in the trial audience. We agree with the habeas court's conclusion that the petitioner failed to establish both that Koch performed deficiently by failing to raise this claim and that a reasonable probability existed that the petitioner would have prevailed on appeal but for that failure.

The following additional facts set forth in the habeas court's memorandum of decision are relevant to our resolution of this claim. "On the first day of the criminal trial . . . the victim testified that she, her sister . . . and her friend . . . went to the petitioner's garage to help him paint. . . . [The victim] at some point was painting upstairs with the petitioner while [the sister] and [the friend] were downstairs painting. [The victim] described the petitioner sexually assaulting her when she was alone with him upstairs while the other two were downstairs. [The sister] and [the friend] did not testify in the criminal trial. During the state's rebuttal arguments, the prosecutor summarized [the victim's] testimony [about] her sister and friend [being] at the garage. The prosecutor stated that [the sister] was sitting right there, presumably in the courtroom. . . .[5] The context in which the prosecutor referred to [the victim] and the two other girls was to contrast [the victim's] trial testimony with that of a defense witness . . . who testified that he only saw two girls. Thus, the prosecutor was highlighting inconsistent testimony about how many girls were present in the garage on the day [the victim] testified the one sexual assault occurred." (Citations omitted; footnote added.)

The court further found that, at the habeas trial, the prosecutor provided no explanation for his closing arguments. Additionally, the court found that Koch "could not recall if [the sister] testified and noted that transcripts do not necessarily reflect nonverbal events during a trial. The transcript of the state's rebuttal argument, while reflecting that the prosecutor referenced [the sister], is silent as to any physical indication of who [the sister] is or where she is sitting. . . . Koch also could not recall if he considered raising a claim based on these events, as well as why he did not [raise] such a claim if he had considered it and could only describe his general strategy of raising claims that had 'some traction.' "

Accordingly, the habeas court concluded that, "[g]iven this paucity of evidence . . . the petitioner has failed to affirmatively show that . . . Koch rendered deficient performance by not raising a claim on appeal regarding the prosecutor's alleged gesture. Furthermore, the petitioner has also not shown that he would have prevailed on appeal had such a claim been raised."

The petitioner argues that the court's conclusion was improper because the court's "focus on the lack of testimony from [the prosecutor] was misdirected, as such testimony would be irrelevant to the petitioner's

claim. Rather, the petitioner's claim related to Koch's failure to raise this instance of impropriety on appeal upon the record available to [him] at the time that he represented the petitioner." According to the petitioner, the record available to Koch when he represented the petitioner on appeal indicated that the prosecutor "referred to the purported identity and presence of [the victim's] younger sister . . . at trial during closing arguments, expressing to the jury his own secret knowledge of identification evidence that was not admitted during the course of the trial. . . . This conduct was improper," and Koch rendered ineffective assistance when he failed to raise that issue on appeal.

The respondent argues that it is unclear whether the prosecutor's conduct was improper. According to the respondent, in the absence of any indication in the trial transcripts that the prosecutor pointed or gestured to anyone in the trial audience, it is equally possible that the prosecutor's statement was simply an inartful argument that the defense witness' testimony was not credible because, if that witness had actually been present at the scene of the 2003 incident, he could not have missed the sister, " 'who [was] sitting right there' at the crime scene." We agree with the respondent that the prosecutor's remark was ambiguous and conclude, therefore, that reasonably competent counsel may not have interpreted it as giving rise to a valid prosecutorial impropriety claim.

Moreover, even if Koch had argued on appeal that this statement constituted prosecutorial impropriety, that argument was unlikely to have been successful. Assuming that the prosecutor pointed or gestured to the sister to indicate that the sister was " 'sitting right there,' " at the petitioner's criminal trial, the statement had minimal, if any, prejudicial effect. The only new information the statement suggested was that the sister, whom the victim claimed had accompanied her to the petitioner's workplace on the day of the 2003 incident, was a real person and that she was present at the petitioner's trial. This information was unlikely to have had any meaningful impact on the jury because only the sister's presence during the 2003 incident, not the fact that she was a real person, was a disputed fact that was central to a critical issue in the case. Contrary to the petitioner's argument, the prosecutor's knowledge of the sister's presence at the trial would not serve to corroborate the victim's testimony that the sister was present during the 2003 incident. Additionally, defense counsel did not object to this statement, which suggests that he did not believe it was so severe that it risked depriving the petitioner of a fair trial, and the prosecutor made such a passing reference on only one discrete occasion. See *State* v. *Fauci*, supra, 282 Conn. 51.

Thus, it would not have been unreasonable for Koch to conclude that this claim lacked " 'traction,' " nor is

there any likelihood that this claim would have succeeded on appeal had Koch raised it. Accordingly, we agree with the habeas court that the petitioner has failed to prove both that Koch performed deficiently by failing to raise this claim on appeal and that the petitioner was prejudiced by that failure.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to use the petitioner's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The petitioner claimed on direct appeal that the prosecutor committed two instances of impropriety that are separate from the improprieties that the petitioner challenges in the present appeal. See *State* v. *Donald H. G.*, supra, 148 Conn. App. 420.

[2] Given its conclusion as to the first and second issues, the habeas court concluded that no articulation was necessary as to the third issue.

[3] Under the two part analysis for reviewing claims of ineffective assistance of appellate counsel; see *Strickland* v. *Washington*, supra, 466 U.S. 687; a court determines under the prejudice prong "whether there is a reasonable probability that, but for appellate counsel's failure to raise the issue on appeal, the petitioner would have prevailed in his direct appeal, i.e., reversal of his conviction or granting of a new trial." (Internal quotation marks omitted.) *Valentine* v. *Commissioner of Correction*, supra, 219 Conn. App. 289–90.

[4] "[O]ur determination of whether any improper conduct by the [prosecutor] violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams*, supra, 204 Conn. 540 . . . . These factors include: [1] the extent to which the [impropriety] was invited by defense conduct or argument . . . [2] the severity of the [impropriety] . . . [3] the frequency of the [impropriety] . . . [4] the centrality of the impropriety to the critical issues in the case . . . [5] the strength of the curative measures adopted . . . and [6] the strength of the state's case." (Internal quotation marks omitted.) *State* v. *O'Brien-Veader*, supra, 318 Conn. 549.

[5] The prosecutor argued during rebuttal in relevant part: "The rest has been placed before you in painstaking detail. Hey, she said three girls on the stand. [Her friend], *her sister . . . who is sitting right there*, as well as herself; three girls. But [the defense witness], who doesn't remember what day it is, says two girls. Is that inconsistency enough? Does that give you reasonable doubt? That's up to you to decide." (Emphasis added.)

[6] As to the petitioner's claims regarding the prosecutor's identification of the sister and use of the term "victim," the petitioner argues that the habeas court erred by deciding these issues separately because "the cumulative effect of the petitioner's claimed improprieties must be analyzed together." The petitioner is correct that, under the second part of the analysis in *State* v. *Williams*, supra, 204 Conn. 540; see part I C 2 of this opinion; the court must assess "whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *Angel T.*, 292 Conn. 262, 287, 973 A.2d 1207 (2009). Nonetheless, given that neither impropriety the petitioner alleged was particularly egregious, frequent, or necessarily even improper under the first part of that analysis, our conclusion remains the same even if we consider the cumulative effect of the alleged improprieties on the fairness of the petitioner's criminal trial.